## In re Anonymous No. 17 D.B. 90

Disciplinary Board Docket no. 17 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

McGIVERN, *Member,* November 7, 1995—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On July 12, 1994, petitioner, [    ], filed a petition for reinstatement. [Petitioner] was disbarred on consent by order of the Supreme Court of Pennsylvania dated March 3, 1992. This order made [petitioner's] disbarment retroactive to January 30, 1990, the date of his temporary suspension under Pa.R.D.E. 214.

The matter was referred to Hearing Committee [    ] comprised of Chairperson [    ], Esquire and members [    ], Esquire and [    ], Esquire. The reinstatement hearing was held on March 1, 1995. The petitioner was represented by [    ], Esquire, Office of Disciplinary Counsel was represented by [    ], Esquire.

On August 2, 1995, the Hearing Committee report was filed with the recommendation that the petition for reinstatement of [petitioner] be granted. The matter

was adjudicated at the meeting of the Disciplinary Board held on August 17, 1995.

## II. FINDINGS OF FACT

The board adopts the findings of fact made by the Hearing Committee.

(1) The petitioner, [      ], was born on March 7, 1925 and is presently 70 years old. He has been married to [A] for 48 years and they have one daughter, [B], Esquire. [Petitioner and A] have a close relationship with their daughter and her family.

(2) [Petitioner] graduated from [      ] University in 1947 and from [      ] Law School in 1950. He was admitted to practice before the bar of the Supreme Court of Pennsylvania on April 16, 1951 and to the federal district court for the [      ] District of Pennsylvania in April 1967.

(3) [Petitioner] was a solo practitioner from 1951 through 1964. In 1964, he formed a partnership with [C] and [D], and practiced in the law firm [E] until 1990.

(4) On June 14, 1989, [petitioner] was convicted by a jury in federal district court for the [      ] District of Pennsylvania on one count of a multi-count indictment. The indictment came out of the investigation into the "[      ] scandal" and charged [petitioner] with racketeering, racketeering conspiracy, paying kickbacks to influence the operation of an employee benefit plan, and embezzlement/conversion. At the time of the conduct charged in the indictment, the [F] Fund was a client of [petitioner's] law firm, [E]. The jury found [petitioner] guilty on count 3 of the indictment, which charged [petitioner] with kicking back and/or aiding or abetting the kickback to union officials of approxi-

mately $16,800, which represented 10 percent of the legal fees paid to [E] as the sole provider of legal services to the members of the fund. The jury acquitted [petitioner] on all other counts. [Petitioner's] appeal from his conviction was denied.

(5) [Petitioner] has acknowledged that he agreed to the payment of the kickback but was unaware of how the funds kicked back were being used until after the indictment was returned.

(6) Following his conviction, [petitioner] was sentenced on July 14, 1989 to one year and a day in prison and fined $25,000. He paid his fine from personal savings in March 1990, and after the denial of his appeal from the conviction, began serving his sentence at the federal penitentiary in [    ] in the minimum security unit. He spent six months in prison, then was released to a halfway house where he spent two weeks before returning to his family.

(7) By order of the Pennsylvania Supreme Court dated January 30, 1990, [petitioner] was temporarily suspended from practice and the matter referred to the Disciplinary Board pursuant to Pa.R.D.E. 214. Following this order, [petitioner] was also suspended from the bar of the United States Court of Appeals for the Third Circuit by order dated March 9, 1990.

(8) On June 4, 1991, [petitioner] executed and submitted a verified statement of resignation under Pa.R.D.E. 215. By order of the Pennsylvania Supreme Court dated March 3, 1992, [petitioner's] resignation was accepted, he was disbarred on consent, and his disbarment was made retroactive to the date of his suspension, January 30, 1990.

(9) [Petitioner] has not engaged in the practice of law from and after the date of his suspension. He worked for a period of about 10 months following his release

from prison as a paralegal for [D] and assisted a friend, in a non-legal capacity, in the sale of personal property. He has essentially been retired since his disbarment.

(10) [Petitioner's] principal sources of income during his disbarment have been retirement accounts established before his disbarment and social security benefits. He also received a referral fee for a legal matter that he had referred before his suspension and payment from his friend for assisting in the aforementioned sale of property. In addition, his wife received payment during this period on the mortgage she held on the office building which housed the [E] firm.

(11) [Petitioner] has no outstanding liens or judgments against him and his debts are limited to car and mortgage payments.

(12) While in prison, [petitioner] worked as a prison gardener and tutored inmates to read English and Spanish and in mathematics. The gardening was his prison job; the tutoring was voluntary. He also tutored reading and math as a volunteer in the [G] Program for about nine months in 1990 until the program moved from the location where he was tutoring.

(13) His primary focus in the past several years has been his family as he and they have confronted and worked together to understand, deal with, and learn from the consequences of his conduct. He has also continued to help his neighbors and friends with advice and moral support and to feed the homeless in his neighborhood.

(14) While he was in practice, [petitioner] was a defendant with his law firm in four malpractice actions, which were filed during the period 1983 through 1990. One complaint was concluded with a judgment of non pros; the other three were settled.

(15) [Petitioner] is presently a party in two civil actions which are unrelated to his prior practice of law. One action involves lis pendens filed on his behalf to protect his interest in a property. In the other action, he is named as an additional defendant in a suit brought by [A] and his former partners on the mortgage given by the individuals who purchased the building which his firm had owned and occupied.

(16) As a practicing lawyer, [petitioner] had a reputation as a trustworthy, knowledgeable, and competent lawyer. Notwithstanding his conviction, [petitioner] is still respected by his family, friends and colleagues at the bar.

(17) [Petitioner] has read and is familiar with the Pennsylvania Rules of Professional Responsibility, has taken the courses required for reinstatement, and has followed developments in the law by reading the Pennsylvania advance sheets.

(18) [Petitioner] hopes to obtain employment with an insurance company or a law firm in the workers' compensation area, if reinstated, and is also interested in handling pro bono matters as he had done before his disbarment.

(19) [Petitioner] appreciates the gravity of and has taken responsibility for his misconduct and its consequences. He has accepted his punishment without bitterness and is remorseful for and chastened by what he did.

(20) [Petitioner] believes that he owes it to the Bar Association to go back into the profession as a charitable lawyer to try and make amends for the blemish he placed on the profession.

(21) [Petitioner] has learned and grown from his experience during the period of his disbarment. He has

the moral qualifications, competency, and learning in law necessary for readmission to the practice of law.

(22) [Petitioner's] reinstatement and his resumption of the practice of law will not be subversive to the public interest or detrimental to the integrity and standing of the bar or the administration of justice.

(23) Office of Disciplinary Counsel did not oppose the reinstatement.

## III. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so egregious as to preclude reinstatement.

Petitioner has satisfied his burden by demonstrating through clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor will it be subversive to the interest of the public.

## IV. DISCUSSION

The sole issue before the Disciplinary Board is whether petitioner's request for readmission to the Pennsylvania Bar should be granted. The inquiry into petitioner's fitness for reinstatement is a two-step procedure.

The Disciplinary Board must determine whether the conduct for which petitioner was disbarred is so egregious as to preclude his reinstatement at this point in time. Such an inquiry demands an analysis of whether a sufficient length of time has evolved since the acts of misconduct occurred during which the petitioner has

engaged in a qualitative period of rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). If petitioner's misconduct does not prevent consideration of his current request for reinstatement, the next question is whether petitioner possesses the moral qualifications and learning in the law necessary to merit readmission to the Pennsylvania Bar. It is petitioner's burden to prove by clear and convincing evidence that he has the moral qualifications and learning in the law necessary to resume practice in the Commonwealth of Pennsylvania, and that his resumption of practice will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

In order to determine whether the misconduct which led to disbarment is so egregious as to preclude reinstatement, the board must review the underlying offense. Petitioner's disbarment followed his conviction in federal court on June 14, 1989, of kicking back money to the roofers' union from legal fees paid by the union to [petitioner's] law firm. It is evident from a review of other cases discussing the *Keller* issue that petitioner's conduct is not so egregious a breach of trust or repugnant to the integrity of the bar or public interest as to obviate his possible reinstatement. In the case of *In re Anonymous No. 26 D.B. 81,* 7 D.&C.4th 260 (1990), an attorney was reinstated after being disbarred for delivery of a bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and laundering checks for a public official. An attorney was reinstated

after disbarment for convictions for making material untrue statements to the Office of [I], fraudulent lot sales and mail fraud. *In re Anonymous No. 18 D.B. 78,* 49 D.&C.3d 298 (1988). An attorney was reinstated after disbarment for conspiring with a bank officer, misapplying bank funds, filing false statements and false loan applications resulting in the misuse of more than $500,000. *In re Anonymous No. 47 D.B. 86,* 14 D.& C.4th 588 (1992). These reinstatement cases clearly demonstrate that the misconduct involved therein is comparable to petitioner's conviction and therefore his conduct is not so egregious as to warrant denial of reinstatement. In addition to these reported cases, the board notes that petitioner's law partner was convicted of the same acts but instead of consenting to disbarment, contested the proceedings and went through the disciplinary process. The partner, [C], had a three year suspension imposed. This sanction reflects the assessment of the board and the Supreme Court that the breach of trust occasioned by the conduct which led to the discipline was not so egregious as to warrant disbarment. In the instant case the conduct is not so egregious as to preclude reinstatement.

Having determined that petitioner's misconduct was not so egregious as to permanently avert his reinstatement to the bar, the next query is whether a quantitative period during which petitioner has engaged in qualitative rehabilitation has elapsed since his 1990 disbarment, so as to make his readmission request timely. *Office of Disciplinary Counsel v. Keller, supra.* Petitioner has been removed from the practice of law for five years. Petitioner's voluntary consent to disbarment served as his first step toward his rehabilitation and signified he

understood the ramifications of his misconduct. During this time frame he has restored and strengthened his relationship with his family, as they learned to deal with the consequences of his actions. Petitioner readily admits his family is the main priority in his life. Petitioner tutored reading and math as a volunteer in the [G] campaign for approximately nine months in 1990. Petitioner has aided homeless people in his neighborhood. Petitioner has admitted his wrongdoing and has accepted responsibility for his actions. *In the Matter of Robert W. Costigan,* 541 Pa. 459, 664 A.2d 518 (1995). Petitioner has spent the past five years reflecting on the adverse consequences of his misconduct. Based on this evidence, the board determines that the five year period of rehabilitation that petitioner has participated in since his disbarment has been meaningful and we conclude that his present reinstatement would not pose a threat to the integrity of the bar or the interest of the public.

The board must next determine whether petitioner possesses the moral character necessary to resume practice. Petitioner presented very favorable character testimony, including prominent members of the bar, to the extent that petitioner is known to be a truthful, honest, dependable, reliable, skilled attorney. Family members and friends testified that [petitioner] has gracefully accepted this shameful turning point in his life without bitterness or excuses and they admire his handling of the situation. This testimony emphasizes that petitioner does possess the requisite moral attributes.

In addition to the moral standards mandatory for reinstatement, petitioner must also possess learning in the law. Petitioner presented non-controverted evidence that during his period of disbarment he kept apprised

of the law by reading the advance sheets, working as a paralegal for a period of time, and completing continuing legal education courses. Petitioner indicated his willingness to enroll in additional classes as necessary. Petitioner has maintained the requisite learning in the law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, [      ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board member Leonard recused himself.

Board member Miller dissented.

Board members Paris and Dean Carson did not participate in the August 17, 1995 adjudication.

## ORDER

And now, November 30, 1995, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 7, 1995, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Castille did not participate in this matter.